**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Julia K. Venditti (State Bar No. 332688)
Joshua R. Wilner (State Bar No. 353949)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com
jvenditti@bursor.com
jwilner@bursor.com

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JANICE ADAM, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CARINGBRIDGE, INC.,<br><br>Defendant. | Case No. 3:25-cv-06042-WHO<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO TRANSFER OR DISMISS**<br><br>Date: December 3, 2025<br>Time: 2:00 p.m.<br>Courtroom: 2<br>Judge: Hon. William H. Orrick |

# TABLE OF CONTENTS

PAGE

INTRODUCTION ..... 1

ARGUMENT ..... 1

I. VENUE IS PROPER IN THIS DISTRICT ..... 1

A. Defendant's Terms of Use Do Not Compel Transfer ..... 1

1. Defendant Violated The Statute At Issue Before Plaintiff Allegedly Agreed to Defendant's Terms of Use ..... 1

2. Defendant's Choice Of Law Provision Is Unenforceable ..... 4

B. Venue is Appropriate Under Fed. R. Civ. P. 12(b)(3) ..... 5

II. DEFENDANT FAILED TO MEET ITS BURDEN TO DEMONSTRATE THAT TRANSFER IS WARRANTED ..... 7

A. Transfer Does Not Promote The Convenience Of The Witnesses, Parties, Or Sources Of Proof ..... 8

B. Plaintiff's Choice Of Forum Is Entitled Deference ..... 9

C. Transfer Would Not Promote The Interest Of Justice ..... 10

1. California Has A Strong Interest In Enforcement Of Its Laws To Protect Its Residents ..... 10

2. Differences In The Cost Of Litigation Weigh Against Transfer ..... 11

3. California Courts Are Equally As Well-Equipped, If Not Better Able, To Analyze California Caselaw ..... 11

III. PLAINTIFF STATES A CIPA CLAIM ..... 12

A. Plaintiff Has Statutory Standing To Bring CIPA Claims ..... 12

B. Plaintiff Did Not Consent To Meta or Google's Conduct ..... 13

1. Wiretapping Of Plaintiff's Confidential Information Occurred Prior To Plaintiff Agreeing To The Privacy Policy ..... 13

2. Plaintiff Did Not Consent To Google And Meta Intercepting Her Information For Their Own Purposes ..... 14

C. Plaintiff Alleges The "Contents" Of Her Communications Were Intercepted ..... 15

D. Plaintiff Alleges Her Communications Were Intercepted "In Transit" ..... 16

E. Plaintiff Alleges Facebook and Google Used Or Attempted To Use The Intercepted Information ..... 17

F. Plaintiff Alleges Defendant Aided, Agreed With, And Conspired With Meta and Google ..... 17

IV. PLAINTIFF PLAUSIBLY ALLEGES INTRUSION UPON SECLUSION ..... 18

V. PLAINTIFF STATES AN ECPA CLAIM ..... 19

CONCLUSION ..... 21

## TABLE OF AUTHORITIES

PAGE(S)

**CASES**

*Allen v. Midwest Express Care, Inc.*, 2025 WL 2240253 (N.D. Ill. Aug. 6, 2025) ... 21

*Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49 (2013) ... 5

*Bergstein v. Parmar*, 2014 WL 12586073 (C.D. Cal. June 23, 2014) ... 6

*Briskin v. Shopify, Inc.*, 135 F.4th 739 (9th Cir. 2025) ... 1, 7

*Brown v. Google LLC*, 685 F. Supp. 3d 909 (N.D. Cal. 2023) ... 13, 15, 16

*Brown v. Google LLC*, 525 F. Supp. 3d 1049 (N.D. Cal. 2021) ... 19, 20

*Bryden v. Verizon California Inc.*, 2016 WL 3186913 (Cal. Ct. App. May 31, 2016) ... 2

*Calhoun v. Google LLC*, 526 F. Supp. 3d 605 (N.D. Cal. 2021) ... 19

*Carijano v. Occidental Petroleum Corp.*, 643 F.3d 1216 (9th Cir. 2011) ... 8

*Castillo v. Costco Wholesale Corp.*, 2024 WL 4785136 (W.D. Wash. Nov. 14, 2024) ... 20, 21

*Castro v. ABM Industries, Inc.*, 2018 WL 2197527 (N.D. Cal. May 14, 2018) ... 3

*Cobb v. Ironwood Country Club*, 233 Cal. App. 4th 960 (2015) ... 3

*Cousin v. Sharp Healthcare,* 702 F. Supp. 3d 967 (S.D. Cal. 2023) ... 1

*D'Angelo v. Penny OpCo, LLC*, 2023 WL 7006793 (S.D. Cal. Oct. 24, 2023) ... 16

*Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834 (9th Cir. 1986) ... 9, 11

*Dep't of Justice v. Reporters Committee for Freedom of Press*,
489 U.S. 749 (1989) .......... 12

*Doe v. Call-on-Doc, Inc.*,
2025 WL 1677632 (S.D. Cal. June 13, 2025) .......... 1

*Doe v. Meta Platforms, Inc.*,
690 F. Supp. 3d 1064 (N.D. Cal. 2023) .......... 1

*Doe v. Regents of Univ. of Cal.*,
672 F. Supp. 3d 813 (N.D. Cal. 2023) .......... 1

*Doe v. Tenet Healthcare Corp.*,
789 F. Supp. 3d 814 (E.D. Cal. 2025) .......... 17

*Echologics, LLC v. Orbis Intelligent Sys., Inc.*,
2021 WL 5203283 (S.D. Cal. Nov. 9, 2021) .......... 7

*Frasco v. Flo Health, Inc.*,
2025 WL 1433825 (N.D. Cal. May 19, 2025) .......... 12

*Gomez v. Great-W. Life & Annuity Ins. Co.*,
638 F. Supp. 3d 1156 (S.D. Cal. 2022) .......... 4

*Gove v. Career Systems Development Corp.*,
689 F.3d 1 (1st Cir. 2012) .......... 3

*Greenley v. Kochava, Inc.*,
684 F. Supp. 3d 1024 (S.D. Cal. 2023) .......... 9, 13

*Hendrick v. Brown & Root, Inc.*,
50 F. Supp. 2d 527 (E.D. Va. 1999) .......... 2

*Hernandez v. Graebel Van Lines*,
761 F. Supp. 983 (E.D.N.Y. 1991) .......... 11

*Hogan v. Amazon.com, Inc.*,
2022 WL 952763 (N.D. Ill. Mar. 30, 2022) .......... 5

*Imran v. Vital Pharms., Inc.*,
2019 WL 1509180 (N.D. Cal. Apr. 5, 2019) .......... 10

*In re Facebook Biometric Info. Priv. Litig.*,
185 F. Supp. 3d 1155 (N.D. Cal. 2016) .......... 5

*In re Facebook Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) .......... 12, 13, 18

*In re Ferrero Litig.*,
768 F. Supp. 2d 1074 (S.D. Cal. 2011) .......... 11, 12

*In re Google Inc. Cookie Placement Consumer Privacy Litig.*,
934 F.3d 316 (3d Cir. 2019) .......... 12

*In re Google RTB Consumer Priv. Litig.*,
606 F. Supp. 3d 935 (N.D. Cal. 2022) .......... 15

*In re Meta Pixel Healthcare Litig. (*"Meta Pixel"),
647 F. Supp. 3d 778 (N.D. Cal. 2022) .......... 1

*Integrated Prac. Sols., Inc. v. Wilson*,
2013 WL 3946061 (S.D. Cal. July 31, 2013) .......... 6

*James v. Walt Disney Co.*,
701 F.Supp.3d 942 (N.D. Cal. 2023) .......... 18

*Javier v. Assurance IQ, LLC*,
2022 WL 1744107 (9th Cir. May 31, 2022) .......... 13

*Jernigan v. California Dept. of Corr. & Rehab.*,
2011 WL 255798 (N.D. Cal. Jan. 24, 2011) .......... 7

*Jones v. GNC Franchising, Inc.*,
211 F.3d 495 (9th Cir. 2000) .......... 7, 8

*Kashanian v. Nat'l Enter. Sys., Inc.,*
337 Cal. Rptr. 3d 18 (2025) .......... 12

*Klay v. All Defendants*,
389 F.3d 1191 (11th Cir. 2004) .......... 2

*Kukui Gardens Corp. v. Holco Cap. Grp., Inc.*,
664 F. Supp. 2d 1103 (D. Haw. 2008) .......... 9

*Long v. Fidelity Water Systems, Inc.*,
2000 WL 989914 (N.D. Cal. May 26, 2000) .......... 2

*LRN Corp. v. RGA Reinsurance Co.*,
2015 WL 13285086 (C.D. Cal. Jan. 20, 2015) .......... 9

*LT Leasing, Inc. v. NHA Hamburger Assekuranz-Agentur GmbH*,
2015 WL 1622846 (E.D. Cal. Apr. 10, 2015) .......... 8

*Luis v. Zang*,
833 F.3d 619 (6th Cir. 2016) .......... 6

*Marden v. LMND Med. Grp., Inc.*,
2024 WL 4448684 (N.D. Cal. July 3, 2024) .......... 20

*Mata v. Zillow Grp., Inc.*,
2024 WL 5161955 (S.D. Cal. Dec. 18, 2024) .......... 16

*Merrimack College v. KPMG LLP*,
88 Mass. App. Ct. 803 (2016) .......... 2

*Metz v. U.S. Life Ins. Co. in City of New York*,
674 F. Supp. 2d 1141 (C.D. Cal. 2009) .......... 9

*Mirza v. Cent. Asia Inst.*,
2014 WL 12663437 (C.D. Cal. May 27, 2014) .......... 11

*Morse v. ServiceMaster Global Holdings Inc.*,
2012 WL 4755035 (N.D. Cal. Oct. 4, 2012) .......... 2, 3

*Murphy v. Thomas Jefferson Univ. Hosps., Inc.*,
2024 WL 4350328 (E.D. Pa. Sept. 30, 2024) .......... 20

*Ojeda v. Kaiser Permanente Int'l., Inc.*,
2022 WL 18228249 (C.D. Cal. Nov. 29, 2022) .......... 18

*Patterson v. Respondus, Inc.*,
593 F. Supp. 3d 783 (N.D. Ill. 2022) .......... 5

*Popa v. Harriet Carter Gifts, Inc.*,
52 F.4th 121 (3d Cir. 2022) .......... 6, 8

*R.C. v. Walgreen Co.*,
733 F. Supp. 3d 876 (C.D. Cal. 2024) .......... 15

*Ribas v. Clark*,
38 Cal. 3d 355 (1985) .......... 5, 12, 13

*Riganian v. LiveRamp Holdings, Inc.*,
2025 WL 2021802 (N.D. Cal. July 18, 2025) .......... 21

*Rodriguez v. Google LLC*,
2021 WL 2026726 (N.D. Cal. May 21, 2021) .......... 19

*Russell v. Citigroup*,
748 F.3d 677 (6th Cir. 2014) .......... 3

*Sandquist v. Lebo Automotive, Inc.*,
1 Cal. 5th 233 (2016) .......... 3

*Sec, Investor Protector Corp. v. Vigman*,
764 F.2d 1309 (9th Cir. 1985) .......... 10

*Security Watch, Inc. v. Sentinel Systems, Inc.*,
176 F.3d 369 (6th Cir. 1999) .......... 2

*Senne v. Kansas City Royals Baseball Corp.*,
105 F. Supp. 3d 981 (N.D. Cal. 2015) .......... 9, 10

*Shah v. Cap. One Fin. Corp.*,
768 F. Supp. 3d 1033 (N.D. Cal. 2025) ... 21

*Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*,
549 U.S. 422 (2007) ... 9

*Smart v. Nat'l Collegiate Athletic Ass'n*,
2023 WL 4827366 (E.D. Cal. July 27, 2023) ... 7

*Smith v. Rack Room Shoes, Inc.*,
2025 WL 1085169 (N.D. Cal. Apr. 4, 2025) ... 15, 18

*Solo v. United Parcel Service Co.*,
947 F.3d 968 (6th Cir. 2020) ... 4

*St. Aubin v. Carbon Health Techs., Inc.*,
2024 WL 4369675 (N.D. Cal. October 1, 2024) ... 1, 17

*Stein v. Edward-Elmhurst Health*,
2025 WL 580556 (N.D. Ill. Feb. 21, 2025) ... 20

*Strigliabotti v. Franklin Res., Inc.*,
2004 WL 2254556 (N.D. Cal. Oct. 5, 2004) ... 7, 8, 10

*Ting v. AT&T,*
319 F.3d 1126 (9th Cir. 2003) ... 4

*United Tactical Sys. LLC v. Real Action Paintball, Inc.*,
108 F. Supp. 3d 733 (N.D. Cal. 2015) ... 5

*Yockey v. Salesforce, Inc.*,
688 F. Supp. 3d 962 (N.D. Cal. 2023) ... 1

**STATUTES**

18 U.S.C. § 2511(1) ... 6

28 U.S.C. § 1391 ... 5

Cal. Civ. Code § 1654 ... 3

Cal. Penal Code § 630 ... 5

Cal. Penal Code § 631(a) ... 17, 18

U.S. Const., art. III ... 12, 13

**RULES**

Fed. R. Civ. P. 12(b)(3) ... i, 5

**OTHER AUTHORITIES**

Restatement (Second) of Conflict of Laws § 187 .................................................................... 4

Plaintiff Janice Adam ("Plaintiff") respectfully submits this opposition to Defendant CaringBridge, Inc.'s ("Defendant" or "CaringBridge") Motion to Transfer or Dismiss Plaintiff's Complaint (ECF No. 16) (The "Motion" or "MTD").

**INTRODUCTION**

Searching for a way to delay justice, and unable to mount a jurisdictional challenge after *Briskin v. Shopify, Inc*., 135 F.4th 739 (9th Cir. 2025), Defendant's Motion primarily focuses on a misguided venue argument that ignores Plaintiff's right to bring a lawsuit in the state and District where she is at home, where the relevant conduct occurred, and where Plaintiff was injured. More importantly, it ignores that when a company such as Defendant here knowingly "direct[s] its activities toward" California, it would be "perverse" to hold the only proper venue for suits against that corporation is the state of the corporation's headquarters.

The remainder of the Motion makes arguments that have been rejected time and again by courts in this District and beyond. *See, e.g.*, *Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064 (N.D. Cal. 2023); *Doe v. Regents of Univ. of Cal*. ("*Regents*"), 672 F. Supp. 3d 813, 819 (N.D. Cal. 2023); *Yockey v. Salesforce, Inc.*, 688 F. Supp. 3d 962 (N.D. Cal. 2023); *In re Meta Pixel Healthcare Litig.* ("*Meta Pixel*"), 647 F. Supp. 3d 778, 793 (N.D. Cal. 2022); *Cousin v. Sharp Healthcare ("Cousin II")*, 702 F. Supp. 3d 967 (S.D. Cal. 2023); *Doe v. Call-on-Doc, Inc.*, 2025 WL 1677632 (S.D. Cal. June 13, 2025); *St. Aubin v. Carbon Health Techs., Inc.*, 2024 WL 4369675 (N.D. Cal. October 1, 2024).

For the following reasons, Defendant's Motion should be denied.

**ARGUMENT**

**I. VENUE IS PROPER IN THIS DISTRICT**

**A. Defendant's Terms of Use Do Not Compel Transfer**

Defendant argues "Plaintiff's claim is subject to the venue selection clause in CaringBridge's Terms of Use." MTD at 5. This is wrong.

*1. Defendant Violated The Statute At Issue Before Plaintiff Allegedly Agreed to Defendant's Terms of Use*

Defendant's transfer argument obfuscates a simple fact: the improper collection of Plaintiff's confidential communications, personally identifying information, and protected health

information occurred *before* Plaintiff would have agreed to the Terms of Use, which appear for the first time at the end of the screening and account creation process. Compl. ¶ 26 ("To create an account, individuals must disclose their health condition to CaringBridge through a drop-down menu that includes options such as 'Brain Cancer,' 'HIV/AIDS,' 'Substance Use Disorder,' and more."); ¶ 85 ("neither Plaintiff nor any Class Member provided their prior consent to the Third Parties' interception of their communications with Defendant, nor did Plaintiff and Class Members consent to Defendant's employment of the same.").

For a contractual clause to apply retroactively, it must "clearly and unequivocally" indicate the same. *Long v. Fidelity Water Systems, Inc.*, 2000 WL 989914, at *4 (N.D. Cal. May 26, 2000). Defendant's Terms of Use does not contain any explicit retroactive language, and so does not meet this bar. *Id.*, at *3 ("Even assuming Mr. Continolo is deemed to have agreed to the arbitration provision, defendants[] offer no justification for holding that he agreed to arbitrate acts that occurred before the effective date of that agreement."); *Morse v. ServiceMaster Global Holdings Inc.*, 2012 WL 4755035, at *4 (N.D. Cal. Oct. 4, 2012) (finding the term "any and all claims" was "not retroactive on its face" because the term referred to "the *material* scope of the arbitration agreement, not *temporal* scope") (emphasis in original); *Merrimack College v. KPMG LLP*, 88 Mass. App. Ct. 803, 806-807 (2016) (denying retroactive application of arbitration clause and noting "[h]ad KPMG wanted to insist that Merrimack forfeit its existing rights to pursue a civil action for past disputes, it easily could have included language expressly stating that the dispute resolution provision had retroactive application"); *Hendrick v. Brown & Root, Inc.*, 50 F. Supp. 2d 527, 535 (E.D. Va. 1999) ("[N]one of the text of that section provides that the DRP reaches back in time to require an employee to arbitrate a claim which had accrued before the contract was signed or before the DRP even took effect."); *Security Watch, Inc. v. Sentinel Systems, Inc.*, 176 F.3d 369, 374 (6th Cir. 1999) ("Had the parties intended to apply the new ADR processes to disputes arising under the previous contracts, we believe they would have done so explicitly."); *Klay v. All Defendants*, 389 F.3d 1191, 1203 (11th Cir. 2004) ("Because arbitration is strictly a matter of contract, we cannot compel arbitration for disputes which arose during time periods in which no effective contract requiring arbitration was governing the parties."); *Bryden v. Verizon California*

*Inc.*, 2016 WL 3186913, at *3 (Cal. Ct. App. May 31, 2016) (affirming denial of motion to compel arbitration where "because [the] agreement did not contain an arbitration clause until many years after Bryden first subscribed, the [trial] court concluded it should not apply retroactively and therefore also could not provide a basis for compelling arbitration"); *Cobb v. Ironwood Country Club*, 233 Cal. App. 4th 960, 966-967 (2015) ("[T]here is nothing in the language of either the bylaws generally, or this specific amendment, that states it is intended to have such a retroactive effect.").

Quite the opposite, the Terms of Use, taken as a whole, evidence an intention that they apply prospectively, rather than retroactively. The Terms of Use make use of the present tense throughout, including in the Choice of law section. Declaration of Tom Booth (the "Booth Decl.") Ex. ¶ 12 (governing disputes "*arising out of*" and "*relating to*.") (emphasis added). The use of the present tense "suggests that the clauses govern present or future conduct, not past conduct." *Castro v. ABM Industries, Inc.*, 2018 WL 2197527, at *4 (N.D. Cal. May 14, 2018) ("[T]he CBAs' use of the present tense 'arise' suggests that the clauses govern present and future, but not past, conduct."); *see also Morse*, 2012 WL 4755035, at *5 ("The use of the present participle 'arising' makes it clear that it applies to claims that may arise going forward, not claims that have already accrued."); *Russell v. Citigroup*, 748 F.3d 677, 679 (6th Cir. 2014) ("The use of the present-tense 'arise,' rather than the past-tense 'arose' or present-perfect 'have arisen,' suggest[s] that the contract governs only disputes that begin—that arise—in the present or future. The present tense usually does not refer to the past.").

Further, to the extent the Terms of Use is ambiguous as to whether it applies retroactively, that ambiguity must be construed against Defendant as the drafter of the agreement. "Ambiguities in written agreements are to be construed against their drafters." *Sandquist v. Lebo Automotive, Inc.*, 1 Cal. 5th 233, 247 (2016) (citing Cal. Civ. Code § 1654).

"Moreover, the rule requiring the resolution of ambiguities against the drafting party applies with peculiar force in the case of a contract of adhesion." *Id.* (cleaned up); *see also Gove v. Career Systems Development Corp.*, 689 F.3d 1, 4-5 (1st Cir. 2012) ("[T]he rationale for interpreting ambiguities against the drafter is particularly compelling in contracts where one party

had little or no bargaining power. Thus, where the parties are in unequal bargaining positions, such as where a standard-form, printed contract is submitted to the other on a 'take it or leave it' basis … the provisions of the contract are generally construed to meet the reasonable expectations of the party in the inferior bargaining position.") (cleaned up).

Further, the Terms of Use is a "contract of adhesion" because it is "a standardized contract, which, imposed and drafted by the party of superior bargaining strength [*i.e.*, CaringBridge], relegates to the subscribing party [*i.e.*, Plaintiff] only the opportunity to adhere to the contract or reject it." *Ting v. AT&T,* 319 F.3d 1126, 1148 (9th Cir. 2003). Accordingly, under California law, this ambiguity must be construed "with peculiar force" against Defendant and in deference to Plaintiff's interpretation that the arbitration clause is not retroactive. Defendant's cited policy favoring arbitration "cannot bridge a textual gap" and is no "substitute for party agreement." *Solo v. United Parcel Service Co.*, 947 F.3d 968, 973 (6th Cir. 2020).

*2. Defendant's Choice Of Law Provision Is Unenforceable*

Even if the Terms of Use did apply retroactively, it does not require the transfer of this dispute. The choice of law provision explicitly states:

> These Terms of Use and the relationship between you and CaringBridge shall be governed by and construed in accordance with the federal laws of the United States of America and the internal laws of the State of Minnesota, U.S.A., **excluding conflict of law's provisions that would indicate the application of the laws of any other jurisdiction.**

Booth Decl. Ex. B (emphasis added).

Here, such an exclusion renders the choice of law provision unenforceable. California courts apply the principles in Restatement (Second) of Conflict of Laws § 187 to resolve disputes involving the enforcement of a choice-of-law provision. Under § 187, "the law of the state chosen by the parties applies unless… the application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue." *Gomez v. Great-W. Life & Annuity Ins. Co.*, 638 F. Supp. 3d 1156, 1159 (S.D. Cal. 2022) (internal quotation marks and citations omitted). CIPA undoubtedly embodies a fundamental policy. "In enacting this [CIPA], the Legislature declared in broad terms its intent 'to protect the right of privacy of the people of this state' from what it perceived as 'a

serious threat to the free exercise of personal liberties that cannot be tolerated in a free and civilized society.'" *Ribas v. Clark*, 38 Cal. 3d 355, 359 (1985) (quoting Cal. Penal Code § 630). But if Minnesota law, which has no comparable wiretapping statute, were to govern that fundamental interest would be thwarted. Such application would leave Plaintiff and California Subclass Members (who are all California citizens) without a remedy for Defendant's violations of their privacy.

Under these circumstances, the Terms of Use cannot be enforced. *See*, *e.g.*, *In re Facebook Biometric Info. Priv. Litig.*, 185 F. Supp. 3d 1155, 1170 (N.D. Cal. 2016) (declining to enforce California choice of law clause where "Illinois will suffer a complete negation of its biometric privacy protections for its citizens if California law is applied"); *Patterson v. Respondus, Inc.*, 593 F. Supp. 3d 783, 812 (N.D. Ill. 2022) (declining to enforce Washington choice of law clause where doing so "would thus thwart Plaintiffs' individual right to assert biometric-privacy claims"); *Hogan v. Amazon.com, Inc.*, 2022 WL 952763, at *4 (N.D. Ill. Mar. 30, 2022) (same).

**B. Venue is Appropriate Under Fed. R. Civ. P. 12(b)(3)**

Defendant incorrectly argues that the Court should dismiss this action under Fed. R. Civ. P. 12(b)(3) because "[t]his District is not an appropriate venue under any of the[] three prongs" of 28 U.S.C. § 1391. Here, the Court "must determine whether the case falls within" the second prong of § 1391(b): whether "a substantial part of the events or omissions giving rise to the claim occurred" in this District. *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 56 (2013); 28 U.S.C. § 1391(b)(2). "[T]o determine whether a substantial part of the events giving rise to the claim occurred in the forum, the court first considers what acts or omissions by the defendants give rise to the plaintiffs' claims." *United Tactical Sys. LLC v. Real Action Paintball, Inc.*, 108 F. Supp. 3d 733, 752 (N.D. Cal. 2015). "[F]or venue to be proper, *significant* events or omissions material to the plaintiff's claim must have occurred in the district in question, even if other material events occurred elsewhere." *Id.* (internal citation omitted) (emphasis in original).

Defendant attempts to dismiss the application of this second prong of § 1391(b) by stating that "the conduct giving rise to Plaintiff's claims … occurred in Minnesota, not Northern California." MTD at 5. However, courts dealing with privacy claims involving Internet tracking have found that

the real harm to Plaintiff "occurred at the point where [the defendant] routed those communications to its own servers. And that was at [the plaintiff's] browser, not where the signals were received at [the defendant's] servers. *Popa v. Harriet Carter Gifts, Inc.*, 52 F.4th 121, 131 (3d Cir. 2022) (cleaned up); *see also Luis v. Zang*, 833 F.3d 619, 633 (6th Cir. 2016) (same). Indeed, "[u]nder Ninth Circuit precedent, the location of the injury in a tort action is a relevant factor in determining whether venue is proper." *Bergstein v. Parmar*, 2014 WL 12586073, at *7 (C.D. Cal. June 23, 2014). *See*, *e.g.*, *id.* (denying motion to dismiss for improper venue because the harm of the privacy related torts were "felt in California where [the plaintiff]'s sensibilities reside."); *Integrated Prac. Sols., Inc. v. Wilson*, 2013 WL 3946061, at *4 (S.D. Cal. July 31, 2013) (denying motion to dismiss for improper venue "[b]ecause the initial alleged misappropriation of IPS's customer lists by Defendant Wilson is alleged to have taken place in the Southern District of California," making that district "a proper venue for this action.").

Plaintiff has shown that significant events material to all three of her claims occurred in this District. ***Count I***. Plaintiff alleges a violation of CIPA § 631(a) on behalf of the California Subclass. Plaintiff specifically alleges that the Google and Meta Pixels are each a "'machine, instrument, contrivance, or … other manner' used to engage in the prohibited conduct at issue here." Compl. ¶ 77 (citing CIPA § 631(a)). These trackers intercepted Plaintiff's communications as she accessed the Website from California, and her communications were similarly routed to Defendant from California. *See* Compl. ¶ 87.

***Count II***. Plaintiff alleges intrusion upon seclusion on behalf of the Class. Plaintiff alleges Defendant violated her privacy rights—the common law right to *not* be subjected to wiretaps" of her "communications, identit[y], health status, searches and other data." Compl. ¶¶ 91-93. This conduct occurred in California where Plaintiff accessed the Website.

***Count III.*** Plaintiff alleges a violation of the Electronic Communications Privacy Act, 18 U.S.C. §§ 2511(1), *et seq.* Plaintiff alleges that Defendant used the Pixels to "intentionally intercept[] … the electronic communications of Plaintiff and Class Members." Compl. ¶ 109. This conduct also occurred in California on Plaintiff's and Class Members' web browsers as they were browsing the websites where the trackers were installed.

Notably, following the Ninth Circuit's recent clarification in *Briskin v. Shopify, Inc.*, 135 F.4th 739, 755 (9th Cir. 2025), it is unquestionable that Defendant purposefully directed its illegal conduct into California to target California residents by installing software onto their devices and collecting personal information and browsing information without California residents' consent. *See id.* at 755-756 (finding the defendant "target[ed] California consumers to extract, collect, maintain, distribute, and exploit for its own profit, not only the California consumers' payment information that it diverts to its own servers, but also all of the other personal identifying information that it extracts from the software it permanently installs on their devices without their knowledge or consent."). It would be "perverse" to allow Defendant to target and exploit California residents for its own profit and simultaneously contest the propriety of being haled into court in California. *Id.* at 758.

## II. DEFENDANT FAILED TO MEET ITS BURDEN TO DEMONSTRATE THAT TRANSFER IS WARRANTED

Defendant argues that Section 1404 "provides an independent basis for transfer to Minnesota." MTD at 6. Defendant has failed to meet its burden to show that transfer to Minnesota is warranted. *See Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 499 (9th Cir. 2000).

"Transfer under § 1404(a) should not be freely granted." *Jernigan v. California Dept. of Corr. & Rehab.*, 2011 WL 255798, at *2 (N.D. Cal. Jan. 24, 2011). Instead, §1404(a) affords district courts broad discretion to apply an "individualized, case-by-case consideration of convenience and fairness." *Jones*, 211 F.3d at 498. If the moving party has shown that venue and jurisdiction would be proper in the transferee district, "the [c]ourt must evaluate three elements: (1) convenience of the parties; (2) convenience of the witnesses; and (3) interests of justice." *Smart v. Nat'l Collegiate Athletic Ass'n*, 2023 WL 4827366, at *3 (E.D. Cal. July 27, 2023). Notably, "[t]ransfer is not appropriate if it is sought as a matter of a defendant's mere preference for another forum or if transfer would merely shift inconvenience to another party." *Echologics, LLC v. Orbis Intelligent Sys., Inc.*, 2021 WL 5203283, at *4 (S.D. Cal. Nov. 9, 2021). And if the balance of convenience is a "close call," the Court should deny the motion to transfer altogether. *Strigliabotti v. Franklin Res., Inc.*, 2004 WL 2254556, at *7 (N.D. Cal. Oct. 5, 2004).

Analysis of a motion to transfer under § 1404(a) "requires the court to weigh multiple factors." *Jones*, 211 F.3d at 498.

> For example, the court may consider: (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof … We also conclude that the relevant public policy of the forum state, if any, is at least as significant a factor in the § 1404(a) balancing.

*Id.* at 488-89. These factors are not met here, and transfer is thus inappropriate.

**A. Transfer Does Not Promote The Convenience Of The Witnesses, Parties, Or Sources Of Proof**

Defendant argues that the "convenience of the witnesses is better served in the District of Minnesota," MTD at 7. Even if this were true, Defendant still fails to meet its burden of proof.

*First*, "[t]o show inconvenience, the moving party should provide specific information regarding the identity and location of witnesses, and the content and relevance of their testimony." *Strigliabotti*, 2004 WL 2254556, at *5. Contrary to Defendant's claim that "the defendant's witness is the single most important factor in deciding venue" (MTD at 7), which relies on out-of-district authority, in this District, "a court will give primary consideration to third party, as opposed to employee, witnesses." *Id.* And Defendant has not "ma[de] a clear showing of facts which establish" it would be significantly more convenient for non-party witnesses, allegedly located in California, to be in Minnesota as opposed to here. *See* MTD at 7-8; *Carijano v. Occidental Petroleum Corp.*, 643 F.3d 1216, 1236 (9th Cir. 2011).

*Second*, Defendant argues that it and most of its employees are based in Minnesota, making it easier to defend itself there. MTD at 11. A defendant must "make[] a clear showing of facts which establish such oppression and vexation of a defendant as to be out of proportion to plaintiff's convenience." *Carijano*, 643 F.3d at 1236 (reversing the district court's dismissal because defendant had "failed to meet" its "substantial burden to persuade the district court to invoke the exceptional tool of *forum non conveniens*"). The moving party's "heavy burden in opposing the plaintiff's chosen forum" is particularly hefty where, as here, "the plaintiff has chosen its home forum." *LT*

*Leasing, Inc. v. NHA Hamburger Assekuranz-Agentur GmbH*, 2015 WL 1622846, at *3 (E.D. Cal. Apr. 10, 2015) (quoting *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007)). At most, this is a neutral factor because "modern technology has greatly reduced the burdens of traveling to litigate in other forums." *Kukui Gardens Corp. v. Holco Cap. Grp., Inc.*, 664 F. Supp. 2d 1103, 1122 (D. Haw. 2008). Plaintiff resides in this District, and not in Minnesota. Thus, Defendant improperly seeks to shift the burden of inconvenience from itself to Plaintiffs.[1]

*Finally*, Defendant's arguments related to the location of its operations are nearly obsolete in the face of modern technology. As courts have noted, the "ease of access to documents does not weigh heavily in the transfer analysis, given that advances in technology have made it easy for documents to be transferred to different locations." *Metz v. U.S. Life Ins. Co. in City of New York*, 674 F. Supp. 2d 1141, 1149 (C.D. Cal. 2009); *see also*, *e.g.*¸ *LRN Corp. v. RGA Reinsurance Co.*, 2015 WL 13285086, at *4 (C.D. Cal. Jan. 20, 2015) ("Modern technology—which enables the transmission of many documents over large distances in little time—often renders documents' physical locations unimportant."); *Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1045 (S.D. Cal. 2023) (weighing against transfer as "evidence likely is predominantly electronic and, therefore, easily transported").

**B. Plaintiff's Choice Of Forum Is Entitled Deference**

Defendant incorrectly argues that Plaintiff's choice of forum "is entitled to little or no weight." MTD at 8. Typically, a party seeking transfer must make "a strong showing … to warrant upsetting the plaintiff's choice of forum." *Senne v. Kansas City Royals Baseball Corp.*, 105 F. Supp. 3d 981, 1058 (N.D. Cal. 2015) (citing *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834 (9th Cir. 1986). In class actions, the degree of deference given to the plaintiff's choice of forum is determined by several considerations:

> [C]ourts must consider the extent of the parties' contacts with the chosen forum, including contacts relating to the plaintiff's cause of action. Plaintiff's choice of forum would receive only minimal deference if the operative facts had not occurred within the forum and the forum had no interest in the parties or subject matter. In

[1] In any case, Plaintiff is not opposed to taking remote depositions or noticing them near witnesses' residences if that will assuage Defendant's concerns.

> contrast, when there is no evidence that plaintiffs engaged in forum shopping and both plaintiffs and defendant have significant contacts with the Northern District of California, plaintiffs' choice of forum carries significant weight.'

*Id.* at 1059 (N.D. Cal. 2015) (cleaned up). And the "Ninth Circuit has [historically] given weight to a class action plaintiff's choice of forum where there is a significant connection between the forum and the activities alleged in the complaint." *Strigliabotti*, 2004 WL 2254556, at *3; *see also Sec, Investor Protector Corp. v. Vigman*, 764 F.2d 1309 (9th Cir. 1985). That is the case here, as Plaintiff's choice of forum carries significant weight as the location where "the operative facts" occurred—namely, violations of Plaintiff's privacy rights as they browsed the respective websites in California. *Senne*, 105 F. Supp. 3d at 1059.

*Senne* is instructive here. In *Senne*, the plaintiffs asserted multiple wage and hour claims on behalf of various state-based putative classes, including a California class. The *Senne* court found it "appropriate to afford some deference to Plaintiffs' choice of forum" for several reasons that are also present here, including the fact that "there is no evidence that Plaintiffs have engaged in forum shopping," *id.* at 1059, that all "of the named plaintiffs reside in California," *id.*, and that "Plaintiffs assert numerous claims under California law on behalf of a California subclass." *Id.*; Compl. ¶¶ 278-304, 316-336. Accordingly, Defendant is wrong that "none of the operative facts with respect to Plaintiff's claims occurred in this District." MTD at 8. Plaintiff's choice of forum is "entitled to at least some deference, even though this [is a] class action" involving putative class members "from numerous states throughout the country." *Senne*, 105 F. Supp. 3d at 1058.

### C. Transfer Would Not Promote The Interest Of Justice

#### *1. California Has A Strong Interest In Enforcement Of Its Laws To Protect Its Residents*

Defendant attempts to brush aside the "local interest in the controversy" factor as "neutral." MTD at 10-11. That is misleading, as this factor weighs heavily against transfer.

Here, Plaintiff brings claims on behalf of only California and Nationwide Classes. There is no Minnesota Subclass. Plaintiff's claims also implicate California and federal law, all of which are within this Court's competency to adjudicate. This District "has a countervailing interest in protecting local residents from [Defendant's] practices" by enforcing California law. *Imran v. Vital*

*Pharms., Inc.*, 2019 WL 1509180, at *6 (N.D. Cal. Apr. 5, 2019). When analyzing the interests of justice, a court may consider the "local interest in having localized controversies decided at home." *Decker Coal Co.*, 805 F.2d at 843. And in the present action, Plaintiff seeks to enforce California law to protect California residents in the putative California Subclass for violations that occurred on Californian soil—making California's interest in resolving this action four-fold. Therefore, this factor weighs heavily against transfer.

*2. Differences In The Cost Of Litigation Weigh Against Transfer*

Defendant contends that this Court should transfer because "key witnesses … primarily reside and work in Minnesota and will have to expend resources to appear in California." MTD at 9. This argument merely asks the Court to shift the burden of expending resources from Defendant, who claims its employees reside in Minnesota, onto Plaintiff, who resides in California.

"A court may … consider the relative means of the parties in deciding a transfer motion." *Mirza v. Cent. Asia Inst.*, 2014 WL 12663437, at *6 (C.D. Cal. May 27, 2014); *see also Hernandez v. Graebel Van Lines*, 761 F. Supp. 983, 989 (E.D.N.Y. 1991) ("Where a disparity between the parties exists, such as an individual plaintiff suing a large corporation, the Court may also consider the relative means of the parties in determining whether to transfer.") (cleaned up). Defendant is a corporation. Plaintiff is a natural person who alleges that Defendant misappropriated her personal information and web browsing data in violation of California and federal law. "[C]orporations are better-equipped than individuals to absorb increased litigation costs." *In re Ferrero Litig.*, 768 F. Supp. 2d 1074, 1081 (S.D. Cal. 2011). Accordingly, this factor weighs against transfer.

*3. California Courts Are Equally As Well-Equipped, If Not Better Able, To Analyze California Caselaw*

Defendant also argues that the factor regarding "the state that is most familiar with the governing law factor is neutral" because federal courts are equally capable of "address[ing] claims arising out of state law." MTD at 10 (internal citation omitted). Yet this argument goes both ways, as California District courts are also equally capable of addressing California state law claims. Moreover, Plaintiff has asserted only federal and California arguments, and seeks to certify only California and Nationwide Classes—not Minnesota claims on behalf of a Minnesota subclass. And

contrary to Defendant's argument, California courts have found that "[a] California district court is more familiar with California law than district courts in other states." *In re Ferrero Litig.*, 768 F. Supp. 2d at 1081. Thus, this factor weighs against transfer.

## III. PLAINTIFF STATES A CIPA CLAIM

### A. Plaintiff Has Statutory Standing To Bring CIPA Claims

Defendant also argues Plaintiff lacks statutory standing under CIPA, contending that Plaintiff has not alleged an injury. MTD at 11-12. Not so.

First, this Court should "decline [Defendant's] invitation to graft the federal standing requirements articulated in article III of the U.S. Constitution — plaintiffs must demonstrate a concrete, particularized injury rather than simply invoking a statutory violation — onto this action." *Kashanian v. Nat'l Enter. Sys., Inc.,* 337 Cal. Rptr. 3d 18, 24 (2025). California's statutory "standing 'requirements are less stringent than those imposed by federal law.'" *Id*. Plaintiff has pled the required statutory violations with sufficient detail to confer standing under CIPA. *See id*. ("[T]he Legislature may instead, as here, elect to authorize standing to sue absent concrete injury.").

To the extent Plaintiff is required to plead a concrete injury, she has done so. As the California Supreme Court has explained, the purpose of wiretapping statutes like the CIPA is to protect the right of an individual "to control the nature and extent of the firsthand dissemination of his statements." *Ribas v. Clark* 38 Cal. 3d 355, 360-61 (1985). In other words, the substantive privacy interest the CIPA protects is a person's right to "control [] information concerning his or her person." *In re Facebook Inc. Internet Tracking Litig.*, 956 F.3d 589, 596 (9th Cir. 2020). This privacy interest has been historically recognized by "both the common law and the literal understandings of privacy." *Dep't of Justice v. Reporters Committee for Freedom of Press* 489 U.S. 749, 763 (1989); *Frasco v. Flo Health, Inc.*, 2025 WL 1433825, at *12 (N.D. Cal. May 19, 2025) ("[T]he harm made actionable at common law was an individual's loss of control over her private affairs or concerns by an interloper's tortious intentional interference.") (cleaned up). Consequently, "obtaining user information" "is the 'concrete harm,' as the user "has lost control over her private information because of another's intentional actions." *Frasco*, 2025 WL 1433825, at *12; *see also In re Google Inc. Cookie Placement Consumer Privacy Litig*. 934 F.3d 316, 325 (3d Cir. 2019) ("In

an era when millions of Americans conduct their affairs increasingly through electronic devices, the assertion … that federal courts are powerless to provide a remedy when an internet company surreptitiously collects private data [] is untenable.”).

Plaintiff has every right to control who gets to know intimate details about her life, health, habits, and interests. *Brown v. Google LLC* 685 F. Supp. 3d 909, 941 (N.D. Cal. 2023) (“Ninth Circuit law indicates [] users (have a reasonable expectation of privacy) over URLs that disclose either unique search terms or the particular document within a website that a person views.”). And Plaintiffs have the right to control who gets to know information that identifies them. *Greenley v. Kochava, Inc.* 684 F. Supp. 3d 1024, 1037 (S.D. Cal. 2023). Plaintiff’s “inability to control or prevent the unauthorized exploration of [her] private affairs is the root of the alleged injury.” *Id.* (citing *In re Facebook*, 956 F.3d at 599).

Simply put, information identifying who Plaintiff is and how she interacted with the Website was *actually* collected by Meta and Google without authorization, compiled into profiles for advertising, and then further disclosed for monetary benefit. Compl. ¶¶ 24-60. Such conduct suffices for statutory standing under the CIPA. *Greenley v. Kochava Inc.*, 684 F. Supp. 3d 1024, 1038 (finding Article III standing where “Plaintiff and members of the Class conferred a benefit on Defendant through the use and dissemination of Plaintiff’s and Class members’ personal information … which Defendant used and disseminated for its own monetary benefit”) (cleaned up).

### B. Plaintiff Did Not Consent To Meta or Google’s Conduct

#### *1. Wiretapping Of Plaintiff’s Confidential Information Occurred Prior To Plaintiff Agreeing To The Privacy Policy*

As described above, Plaintiff’s sensitive information was wiretapped during the account creation process and before she supposedly agreed to Defendant’s Privacy Policy. Arg. § I.A.1, *supra*. This alone dispenses Defendant’s consent defense because CIPA requires consent prior to the alleged interception. *Ribas v. Clark*, 38 Cal. 3d 355, 361 (“The Privacy Act has been read to require the assent of all parties to a communication *before another may listen*.”) (emphasis added); *Javier v. Assurance IQ, LLC*, 2022 WL 1744107, at *2 (9th Cir. May 31, 2022) (“[W]e conclude

that the California Supreme Court would interpret Section 631(a) to require the prior consent of all parties to a communication.").

*2. Plaintiff Did Not Consent To Google And Meta Intercepting Her Information For Their Own Purposes*

Even if Defendant could rely on its Privacy Policy, agreement to that Policy does not create consent to the conduct at issue. First, the Privacy Policy says explicitly "The use of cookies by our partners, tracking utility company, and service providers is not covered by our privacy statement." MTD at 13. This makes clear that the Privacy Policy does not apply to the conduct at issue.

Further, the entire Privacy Policy contemplates collecting information *for CaringBridge's use only*. *See, e.g.*, Booth Decl. Ex. C p. 6 ("Generally, CaringBridge does not use any personal information posted in content on an Individual Page, except to provide our Service to you, your friends and your family."); *id*. p. 7 ("CaringBridge stores personal information collected through our Service on thirdparty service providers systems, generally through the use of their software as a service or infrastructure products. This information, while stored on their systems is generally not available for the third-party service provider to access.") This is consistent with CaringBridge's marketing of itself as a "trusted, private, and ad-free space." Compl. ¶ 4 n. 3. Nowhere in the Privacy Policy does Defendant say Google or Meta will keep permanently any information intercepted and use it to target advertising for companies other than Defendant. This conduct, which is in stark contrast to the Privacy Policy language, is clearly alleged in the Complaint. Compl. ¶ 49 ("In addition to helping companies like Defendant make better use of their own customer information, Google aggregates that language, with the information collected from all sites containing the Google Analytics Pixel to track users across multiple websites and platforms, which increases the value of Google's advertising services when they are offered to other companies."); ¶ 55 ("When the Meta Pixel captures an action, it sends a record to Facebook. Once this record is received, Meta processes it, analyzes it, and assimilates it into datasets like the Core Audiences and Custom Audiences.").

As such, any consent defense based on the Privacy Policy fails.

**C. Plaintiff Alleges The "Contents" Of Her Communications Were Intercepted**

Defendant next argues that "much of the data that Plaintiff alleges was 'intercepted' is not the 'contents or meaning of a communication.'" MTD at 14.

First, the interception of *any* information that constitutes content under CIPA triggers the violation regardless of whether "much" of the information is or is not content.

Second, Defendant's argument is incorrect. Content is defined to 'include[ ] any information concerning the substance, purport, or meaning of [the] communication.'" *Brown v. Google LLC*, 685 F. Supp. 3d 909, 935 (N.D. Cal. 2023). This includes "the links, pages, and tabs users click and view and the search terms they employ," including those contained in URLs. *R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876, 902 (C.D. Cal. 2024) ("URLs which disclose search terms that reveal website users' 'personal interests, queries, and habits' are 'contents' of communications under CIPA and ECPA.").

Contrary to Defendant's contention, Plaintiff alleges she "created an account on the Website while in California in 2023, and [], in the course of doing so, input[ted] sensitive medical and personally identifying information that was intercepted in real time by the Third Parties." Compl. ¶ 12; *see also id*. ¶¶ 44 ("Each time a user creates a CaringBridge account and discloses their medical condition, the Google Analytics tracking code automatically sends a simultaneous transmission of that information to Google[.]"); 59 ("[T]he Meta Pixel intercepts "button click" events showing that users took certain actions on the website."); 60 ("[W]hen a user navigates to a page on the Website, the Meta Pixel first generates a PageView event that discloses the webpage's Universal Resource Locator ("URL") containing the page that the consumer has requested and viewed. When the user enters their email address, that information is disclosed to Meta in the URL.").

In other words, Plaintiff alleges that the Third Parties collect detailed URLs and button clicks (which are content) and use it to create comprehensive profiles. Because these "detailed URLs reflect[] users' queries," they constitute content. *Smith v. Rack Room Shoes, Inc.*, 2025 WL 1085169, at *4 (N.D. Cal. Apr. 4, 2025); *In re Google RTB Consumer Priv. Litig.*, 606 F. Supp. 3d

935, 949 (N.D. Cal. 2022) (finding under the Electronic Communications Privacy Act that "referrer URL that caused navigation to the current page," details about "the publisher object of the site or app," and "the content within the site or app" all were "content"); *Brown*, 685 F. Supp. 3d at 936 ("full-string detailed URL[s]" containing "users' actions on a website, and their search queries" are content).

**D. Plaintiff Alleges Her Communications Were Intercepted "In Transit"**

Defendant's argument that Plaintiff's communications were not intercepted "in transit" (MTD at 14) fares no better. "While a plaintiff must do more than merely restate the pleading requirement of real time interception, the standard is not overly burdensome. For instance, allegations that communications are intercepted in real time through the use of computer code provides sufficient factual detail to support the 'in transit' requirement." *Mata v. Zillow Grp., Inc.*, 2024 WL 5161955, at *6 (S.D. Cal. Dec. 18, 2024) (cleaned up). "[A] pleading standard to the contrary would require the CIPA plaintiff to engage in a one-sided guessing game because the relevant information about data capture typically resides uniquely in the custody and control of the CIPA defendant." *D'Angelo v. Penny OpCo, LLC*, 2023 WL 7006793, at *8 (S.D. Cal. Oct. 24, 2023). The Complaint contains exactly those allegations. The operation of the Trackers and what information they collect is described in great detail. Compl. ¶¶ 28-60. The Complaint alleges that the interceptions at issue are made in real time as the information is entered into the Website. *Id.* ¶¶ 12 ("Plaintiff provided sensitive medical and personally identifying information. As discussed in further detail below, that information was intercepted as it was entered into the Website by the Google and Meta[.]"); 44 ("Each time a user creates a CaringBridge account and discloses their medical condition, the Google Analytics tracking code automatically sends a simultaneous transmission of that information to Google[.]"); 45 ("Google intercepted this type of confidential information from Plaintiff and Class Members in real time as the information was entered into the Website."). The Complaint then provides multiple examples of this process occurring. *Id.* ¶¶ 111, 168, 177. Nothing more is required at this stage.

**E. Plaintiff Alleges Facebook and Google Used Or Attempted To Use The Intercepted Information**

In addition to Clause Two of CIPA § 631(a), Plaintiff alleges that Meta and Google violated Clause Three by "using or attempting to use" the information contained in Plaintiff's communication with the Website. The Complaint clearly alleges that both Google and Meta used the information for targeted advertising. Compl. ¶¶ 6 ("The communications input into the Website are surreptitiously intercepted, stored, and aggregated by Google and Meta and used by Google and Meta for their own business purposes."); 30-35 (description of ways the Google Analytics platform uses collected data); 47 ("Google collects information from Defendant's website and sends back an analysis of that information, identifying website traffic and ad performance and targeting ads for specific individuals."); 49 ("Google aggregates that information with the information collected from all sites containing the Google Analytics Pixel to track users across multiple websites and platforms."); 55 ("When the Meta Pixel captures an action, it sends a record to Facebook. Once this record is received, Meta processes it, analyzes it, and assimilates it into datasets like the Core Audiences and Custom Audiences.").

**F. Plaintiff Alleges Defendant Aided, Agreed With, And Conspired With Meta and Google**

Defendant incorrectly argues that "Plaintiff must plead scienter." MTD at 14. "As an initial matter, the plain text of CIPA imposes liability on any person 'who aids, agrees with, employs, or conspires' with another party. Cal. Penal Code § 631(a)… Because '[t]he statute as worded does not include an intent standard,' the court considers whether Plaintiff[ has] alleged that Defendant[] "aided, agreed with, employed, or conspired with [Meta]." *Doe v. Tenet Healthcare Corp.*, 789 F. Supp. 3d 814 (E.D. Cal. 2025) (citing *St. Aubin*, 2024 WL 4369675 at *7). Here, Plaintiff alleges "that Defendant[] chose to install Meta Pixel [and Google Analytics] on [its] Web Properties and by installing [the Trackers] Defendant[] assisted Meta [and Google] with intercepting the [booking information of users] without their authorization. At the motion to dismiss stage, Plaintiff['s] allegations are sufficient to plead that Defendant[] either aided, agreed, employed, or conspired with Meta in the alleged interception of their information and data without their consent within the meaning of CIPA." *Id.* (internal citation omitted); *see* Compl. ¶ 43

("Defendant intentionally embedded and configured Google Analytics on all pages of its Website."); ¶ 47 ("Google collects information from Defendant's website and sends back an analysis of that information, identifying website traffic and ad performance and targeting ads for specific individuals."); ¶ 59 ("Defendant knowingly discloses users' confidential information and confidential health information to Meta[.]"); ¶ 82 ("[B]y contracting for the provision of Google's and Meta's Services and allowing Google and Meta to access and intercept Plaintiff's and Class Members' communications, Defendant violated CIPA § 631(a) by aiding, agreeing with, employing, permitting, or otherwise enabling Google and Meta's unlawful wiretapping.").

To the extent the language of section 631(a) could be read to require any intent, Plaintiff has so alleged. *Smith*, 2025 WL 1085169 at *4 ("Plaintiffs have adequately alleged intent. First, Plaintiffs allege that Rack Room affirmatively embedded Meta Pixel and Attentive Tag into its website. Second, Plaintiff alleges that the purpose of Meta and Attentive's code is to 'track[ ] the people and type of actions they take'… Therefore, it is plausible to infer from Rack Room's alleged affirmative act of integrating the third-party code into its website that it knew Meta and Attentive would intercept personally identifiable information and that Rack Room had the purpose of employing Meta and Attentive to do so."); *James v. Walt Disney Co.* 701 F.Supp.3d 942, 954 (N.D. Cal. 2023), *motion to certify appeal denied*, 2024 WL 664811 (N.D. Cal. Feb. 16, 2024) (finding intent satisfied under CIPA where "it can reasonably be inferred that Disney entered into a contractual arrangement with Oracle under which Oracle would collect information from EPSN.com website users *so that Disney could market to and attract new customers.*") (emphasis in original). Nothing more is required.

## IV. PLAINTIFF PLAUSIBLY ALLEGES INTRUSION UPON SECLUSION

Defendant argues that "Plaintiff alleges no invasion of privacy." MTD at 15. This is wrong.

To state a claim for invasion of privacy, Plaintiff must allege: "(1) there exists a reasonable expectation of privacy, and (2) the intrusion was highly offensive." *Facebook Tracking*, 956 F.3d at 601. Plaintiff has done so.

"It is well-settled under California law that, although not absolute, people have a privacy interest in their 'medical history and information.'" *Ojeda v. Kaiser Permanente Int'l., Inc.*, 2022

WL 18228249, at *6 (C.D. Cal. Nov. 29, 2022). Plaintiff properly pleads a specific legally protected privacy interest — namely, an interest in: "(1) precluding the dissemination and/or misuse of [her] sensitive, confidential communications and protected health information; and (2) making personal decisions and/or conducting personal activities without observation, intrusion or interference, including, but not limited to, the right to visit and interact with various internet sites without being subjected to wiretaps without Plaintiff's and Class Members' knowledge or consent." Compl. ¶ 91. Therefore, Plaintiff has alleged a specific privacy interest in her medical information.

Further, Defendant has no valid basis for arguing that its invasion of privacy was not highly offensive. Notably, Defendant ignores a host of recent cases that have held that surreptitious data collection meets the "highly offensive" requirement — even when the data at issue was only browsing data, as opposed to the highly-sensitive health information at issue here. *See, e.g.*, *Rodriguez v. Google LLC*, 2021 WL 2026726, at *8 (N.D. Cal. May 21, 2021) (holding the interception of browsing data was highly offensive given that Google "set an expectation that it would not save plaintiffs' activity on apps") (internal quotations omitted); *Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1079-80 (N.D. Cal. 2021) (finding the data collections to be highly offensive because Google's "representations regarding private browsing mode could have led users to assume that Google would not view their activity when in private browsing mode"); *Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 631 (N.D. Cal. 2021) (finding Google's actions highly offensive because Google's "representations regarding Chrome's sync function could have led users to assume that Google would not receive the personal information at issue . . . while unsynced").

## V. PLAINTIFF STATES AN ECPA CLAIM

Finally, Defendant argues "the party exception to ECPA liability applies." MTD at 17. Not so.

For an ECPA claim, "consent is not a defense where the communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State." *Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1067 (N.D. Cal. 2021) (cleaned up). "Under this exception, Plaintiffs must allege that either the 'primary

motivation or a determining factor in [the interceptor's] actions has been to injure plaintiffs tortiously.'" *Id.*[2]

The Complaint clearly sets forth the crimes and torts committed against Plaintiff, including violations of CIPA, the California Constitution, and intrusion upon seclusion. Compl. ¶¶ 8-10, 24-27, 73-96. Further, additional privacy violations occurred after the interception, when the data collected was assembled into profiles by the Third Parties and used to target Plaintiff with advertising, which "is done for the purpose of improperly increasing the advertising efficiency and, by extension, profits of both parties." Compl. ¶ 50; *see also id*. ¶¶ 44-60.

Importantly, the Wiretap Act does not distinguish between the use of communications and a separate criminal or tortious purpose. Indeed, the use of intercepted communications is often the criminal or tortious purpose." *Castillo v. Costco Wholesale Corp.*, 2024 WL 4785136, at *5 (W.D. Wash. Nov. 14, 2024).

As such, numerous courts have found "tortious intent sufficiently pled where [as here] 'Plaintiffs have alleged that [technology companies] intercepted their communications for the purpose of associating their data with preexisting user profiles' [,] that this 'association of their data with preexisting user profiles [allegedly] violated state law,'" and that third parties "benefited from this interception by using the information to sell ads to other third-party advertisers." *Marden v. LMND Med. Grp., Inc.*, 2024 WL 4448684, at *3 (N.D. Cal. July 3, 2024) (quoting *Brown*, 525 F. Supp. 3d at 1067); *see also Murphy v. Thomas Jefferson Univ. Hosps., Inc.*, 2024 WL 4350328, at *4 (E.D. Pa. Sept. 30, 2024) ("The Third Circuit has held that in order to invoke the crime-tort exception of the ECPA a plaintiff must plead an intended tortious or criminal use of the acquired

---

[2] Some courts have rejected this notion altogether, finding that only the act must be tortious, not the intent. *See Stein v. Edward-Elmhurst Health*, 2025 WL 580556, at *5–6 (N.D. Ill. Feb. 21, 2025) ("That approach seems difficult to square with the statutory text. … The text points to the 'purpose of committing any criminal or tortious *act*.'… A person can have a purpose of committing an act that is criminal or tortious, without having a criminal or tortious purpose…The other reading would, in effect, import a *mens rea* element into the statute. Congress could have required a showing that the person acted with a criminal or tortious purpose. The text could have covered intercepting a communication 'for a criminal or tortious purpose.' Or the statute could have applied to intercepting a communication 'for a criminal or tortious purpose to commit a criminal or tortious act.' But that's not what the text says. The 'act' must be criminal or tortious, but the 'purpose' does not need to be criminal or tortious.").

information. Plaintiff alleges that Defendant intercepted Plaintiff's IIHI for the intended use of disclosing the information to Meta, which is a HIPAA violation and therefore prohibited by federal law."); *Allen v. Midwest Express Care, Inc.*, 2025 WL 2240253, at *3 (N.D. Ill. Aug. 6, 2025) ("Defendant argues that the Crime-Tort Exception does not apply because the criminal or tortious act is not separate and distinct from the alleged wiretap….Plaintiff properly alleges that Defendant intentionally violated HIPAA when it allowed Plaintiff's IIHI to be intercepted, disclosed, viewed, analyzed, and used by third parties, which is distinct from the improper interception in the ECPA claim."); *Castillo*, 2024 WL 4785136, at *5 ("Plaintiffs allege that Costco not only intercepted their data, but also used their data to generate targeted advertisements for financial gain."); *Riganian v. LiveRamp Holdings, Inc.*, 2025 WL 2021802, at *9-10 (N.D. Cal. July 18, 2025).

*Shah* is instructive. There, as here, the defendant, a website operator, installed trackers (including the trackers from Google and Meta at issue here) on its website that intercepted information about its customer's financial transactions. *Shah v. Cap. One Fin. Corp.*, 768 F. Supp. 3d 1033, 1041 (N.D. Cal. 2025). The court denied the defendant's motion to dismiss the plaintiffs' ECPA claim, finding:

> Plaintiffs do allege in the complaint that Defendant intercepted Plaintiffs' electronic communications. However, Plaintiffs also allege that Defendant intercepted the contents of the electronic communications for an unauthorized purpose, which resulted in tortious acts. Because Defendant's actions are allegedly tortious, the one-party exemption does not apply.
>
> Another reason that the one-party exemption does not apply is because the issue of whether Plaintiffs consented to Defendant's conduct is at the center of the dispute. Because consent is a factual determination, it cannot be determined on the pleadings… Therefore, Plaintiffs state a claim as to the ECPA.

*Id*. at 1053 (internal citations omitted).

Plaintiff's allegations here are similar to those in *Shah* because she alleges the use of her and Class Members' information for advertising. Compl. ¶¶ 46-50; 55-60.

**<u>CONCLUSION</u>**

For the foregoing reasons, Defendant's Motion should be denied in its entirety.

Dated: November 3, 2025

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: /s/ Julia K. Venditti
Julia K. Venditti

L. Timothy Fisher (State Bar No. 191626)
Julia K. Venditti (State Bar No. 332688)
Joshua R. Wilner (State Bar No. 353949)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com
jvenditti@bursor.com
jwilner@bursor.com

*Attorneys for Plaintiff*