**BAKER & HOSTETLER LLP**
Paul Karlsgodt (*pro hac forthcoming*)
Jason A. Orr (SBN 301764)
pkarlsgodt@bakerlaw.com
jorr@bakerlaw.com
1801 California Street, Suite 4400
Denver, CO 80202
Telephone: 303.861.0600
Facsimile: 303.861.7805

*Attorneys for Defendant CaringBridge, Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| JANICE ADAM, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CARINGBRIDGE, INC.,<br><br>Defendant. | Case No.: 3:25-cv-06042-WHO<br><br>[*Assigned to Hon. William H. Orrick*]<br><br>**DEFENDANT CARINGBRIDGE INC.'S REPLY IN SUPPORT OF MOTION TO TRANSFER OR, IN THE ALTERNATIVE, TO DISMISS THE COMPLAINT**<br><br>**Date**: December 3, 2025<br>**Time**: 2:00 p.m.<br>**Dept**.: Courtroom 2, 17th Floor<br><br>**Complaint Filed**: July 17, 2025 |

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
DENVER

## TABLE OF CONTENTS

Page

I. INTRODUCTION ... 1

II. THE TERMS OF USE AND THE FORUM SELECTION CLAUSE APPLY TO THIS DISPUTE ... 1

A. The Terms of Use Apply ... 2

B. The Terms of Use Require This Action to Be Brought in Minnesota ... 4

III. TRANSFER IS PROPER UNDER 28 U.S.C. §§ 1391 & 1404 ... 5

IV. PLAINTIFF FAILS TO STATE A CLAIM ... 7

A. Plaintiff Has Not Alleged Statutory Standing Under CIPA ... 7

B. Plaintiff Has Not Alleged Actionable “Interception” of “Communications” Under CIPA or the ECPA ... 9

C. Plaintiff Has Not Pleaded Scienter as Required by CIPA ... 12

D. Plaintiff Alleges No Intrusion Upon Seclusion ... 13

V. CONCLUSION ... 14

## TABLE OF AUTHORITIES


**Page(s)**

**Cases**

*Allen v. Midwest Express Care, Inc.*,
No. 24-cv-05348, 2025 WL 2240253 (N.D. Ill. Aug. 6, 2025) .......... 9

*Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W.D. Tex.*,
571 U.S. 49 (2013) .......... 5

*Augustine v. Great Wolf Resorts, Inc.*,
No. 23-cv-00281, 2024 WL 3450967 (S.D. Cal. July 18, 2024) .......... 11

*Bates v. C & S Adjusters, Inc.*,
980 F.2d 865 (2d Cir.1992) .......... 5

*Bockman v. 1st Am. Mktg. Corp.*,
459 Fed. App'x 157 (3d Cir. 2012) .......... 6

*Brown v. Google LLC*,
525 F. Supp. 3d 1049 (N.D. Cal. 2021) .......... 9

*Bryden v. Verizon Cal. Inc.*,
No, A143506, 2016 WL 3186913 (Cal. Ct. App. May 31, 2016) .......... 4

*Carnival Cruise Lines, Inc. v. Shute*,
499 U.S. 585 (1991) .......... 5

*Cobb v. Ironwood Country Club*,
233 Cal. App. 4th 960 (2015) .......... 4

*Cottman v. Transmission Sys., Inc.*,
36 F.3d 291 (3d Cir. 1994) .......... 6

*Cousin v. Sharp Healthcare*,
681 F. Supp. 3d 1117 (S.D. Cal. 2023) .......... 11

*Heeger v. Facebook, Inc.*,
509 F. Supp. 3d 1182 (N.D. Cal. 2020) .......... 9

*Heiting v. FKA Dist'g Co.*,
No. 2:24-cv-073214, 2025 WL 736594 (C.D. Cal. Feb. 3, 2025) .......... 7

*Heiting v. Taro Pharms. USA, Inc.*,
709 F. Supp. 3d 1007 (C.D. Cal. 2023) .......... 12


BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
DENVER

*Hendrick v. Brown & Root, Inc.*,
50 F. Supp. 2d 527 (E.D. Va. 1999) .......... 3

*Hubbard v. Google LLC*,
No. 19-cv-07016, 2024 WL 3302066 (N.D. Cal. July 1, 2024) .......... 9

*In re iPhone Application Litig.*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012) .......... 13

*Jackson v. Tesla, Inc.*,
772 F. Supp. 3d 1111 (N.D. Cal. 2025) .......... 7

*James v. Walt Disney Co.*,
701 F. Supp. 3d 942 (N.D. Cal. 2023) .......... 13

*Kashanian v. Nat'l Enter. Sys., Inc.*,
337 Cal. Rptr. 3d 18 (2025) .......... 7

*Katz-Lacabe v. Oracle Am., Inc.*,
668 F. Supp. 3d 928 (N.D. Cal. 2023) .......... 9

*Khamooshi v. Politico LLC*,
786 F. Supp. 3d 1174 (N.D. Cal. 2025) .......... 9

*Khamooshi v. Politico LLC*,
No. 24-cv-07836, 2025 WL 2822879 (N.D. Cal. Oct. 2, 2025) .......... 8

*King v. Hard Rock Café Int'l (USA), Inc.*,
No. 2:24-cv-01119, 2025 WL 1635419 (E.D. Cal. June 9, 2025) .......... 11

*Klay v. All Defendants*,
389 F.3d 1191 (11th Cir. 2004) .......... 4

*Lakes v. Ubisoft, Inc.*,
777 F. Supp. 3d 1047 (N.D. Cal. 2025) .......... 10

*Lee v. Fisher*,
70 F.4th 1129 (9th Cir. 2023) .......... 5

*Leroy v. Great W. United Corp.*,
443 U.S. 173 (1979) .......... 5

*Long v. Fidelity Water Sys., Inc.*,
No. C-97-20118, 2000 WL 989914 (N.D. Cal. May 26, 2000) .......... 3

*Low v. LinkedIn Corp.*,
900 F. Supp. 2d 1010 (N.D. Cal. 2012) .......... 13

*M/S Bremen v. Zapata Off-Shore Co.*,
407 U.S. 1 (1972) .......... 5

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
DENVER

*Merrimack Coll. v. KPMG LLP*,
88 Mass. App. Ct. 803 (2016) ..... 3

*Morse v. ServiceMaster Global Holdings, Inc.*,
No. C 10-00628, 2012 WL 4755035 (N.D. Cal. Oct. 4, 2012) ..... 3

*Murphy v. Schneider Nat'l, Inc.*,
362 F.3d 1133 (9th Cir. 2004) ..... 5

*Myers v. Bennett Law Offices*,
238 F.3d 1068 (9th Cir. 2001) ..... 5

*People v. Hall*,
2 Cal. 5th 494 (2017) ..... 12

*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. 2025) ..... 7, 8, 9

*Rand v. Eyemart Express, LLC*,
No. 3:24-cv-621, 2025 WL 1519726 (N.D. Tex. May 27, 2025) ..... 10

*Rodriguez v. Culligan Int'l Co.*,
No. 25-cv-00225, 2025 WL 3064113 (S.D. Cal. Nov. 3, 2025) ..... 8

*Rodriguez v. Fountain9, Inc.*,
No. 24STCV04504, 2024 WL 4905217 (L.A. Super. Ct. Nov. 21, 2024) ..... 7

*Salah v. Nike, Inc.*,
562 F. Supp. 3d 503 (C.D. Cal. 2021) ..... 10

*Sec. Watch, Inc. v. Sentinel Sys., Inc.*,
176 F.3d 369 (6th Cir. 1999) ..... 4

*Smith v. Rack Room Shoes, Inc.*,
No. 24-cv-06709, 2025 WL 1085169 (N.D. Cal. Apr. 4, 2025) ..... 12

*Steen v. Murray*,
770 F.3d 698 (8th Cir. 2014) ..... 6

*Swarts v. Home Depot, Inc.*,
689 F. Supp. 3d 732 (N.D. Cal. 2023) ..... 11

*TradeComet.com LLC v. Google, Inc.*,
435 Fed. App'x 31 (2d Cir. 2011) ..... 3

*Trujillo v. Gomez*,
No. 14-cv-2483, 2015 WL 1757870 (S.D. Cal. Apr. 17, 2015) ..... 3

*In re Verisign, Inc. Derivative Litig.*,
531 F. Supp. 2d 1173 (N.D. Cal. 2007) ..... 3

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
DENVER

*Winsor v. Sequoia Benefits & Ins. Servs., LLC*,
62 F.4th 517 (9th Cir. 2023)........................................ 8

*In re Zynga Privacy Litig.*,
750 F.3d 1098 (9th Cir. 2014)........................................ 10

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
DENVER

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
DENVER

## I. INTRODUCTION

Plaintiff does not deny that she agreed to CaringBridge's Terms of Use and its Privacy and Cookie Policy. The Terms of Use clearly require that any action relating to Plaintiff's use of the Website must be brought in Minnesota. Plaintiff's arguments to the contrary, which focus on the exact timing of her agreement and the "retroactive" application of the Terms, have no merit. The Terms apply to claims against CaringBridge that arose before Plaintiff affirmatively agreed to the Terms of Use, and Plaintiff lacks standing to bring any claim based on the alleged data transmissions occurring prior to her agreeing to the Terms of Use. For that reason alone, this Court should transfer venue to the District of Minnesota.

Transfer is also appropriate under both mandatory (Section 1391) and permissive (Section 1404) procedures. This is a lawsuit against a Minnesota nonprofit concerning its Minnesota-based activities. While Plaintiff insists that her vaguely defined privacy injury took place in California, all the conduct that CaringBridge is alleged to have performed took place in Minnesota. Venue is therefore not only improper here, but there is an abundance of reasons to transfer to the District of Minnesota for convenience.

In addition, Plaintiff has failed to state a claim. Her conclusory and threadbare allegations do not adequately plead an injury for purposes of statutory standing under CIPA, nor do they allege the violation of a privacy interest sufficient to state a claim for intrusion upon seclusion. Plaintiff's own descriptions of the technologies used on the Website and the information that they collect confirm that CaringBridge is not sharing its users' communications with Google, Meta, or any other third party. Should this Court not transfer this action to the District of Minnesota, Plaintiff's causes of action under CIPA, the ECPA, and common law should all be dismissed with prejudice.

## II. THE TERMS OF USE AND THE FORUM SELECTION CLAUSE APPLY TO THIS DISPUTE

Plaintiff does not contest that she made an account on CaringBridge in 2023 and that when she did so, she affirmatively agreed to CaringBridge's Terms of Use. She also admits that on the face of those Terms, "[a]ny legal action or proceeding relating to [her] access to, or use of, [CaringBridge's] service … shall be instituted only in a state or federal court located in Hennepin

County, Minnesota, USA." Booth Decl. Ex. B. Plaintiff makes two arguments to avoid the consequences of the Terms of Use: First, she argues that her claim arose before she agreed to the Terms, which are not "retroactive." Opp. at 1–4. Second, she argues that her dispute falls outside the scope of the forum selection clause. *Id.* at 4–5. Neither argument has merit.

**A. <u>The Terms of Use Apply</u>**

Plaintiff contends that because "the improper collection of Plaintiff's confidential communications, personally identifying information, and protected health information occurred before Plaintiff would have agreed to the Terms of Use," she had not agreed to those Terms when her claim arose. Opp. at 1–2. She further argues that those Terms do not apply retroactively to cover the time when her dispute arose. *Id.* at 2.

At the outset, Plaintiff misrepresents facts about the Website, which provided no opportunity for Plaintiff to share "confidential" or "personally identifying" or "protected health" information prior to Plaintiff creating an account. Booth Decl. ¶¶ 5–7. Even assuming the pixel technologies collected information about Plaintiff the moment she visited the Website, the information collected prior to Plaintiff creating an account and agreeing to the Terms would be limited to "IP address, geolocation, browser, operating system, device information, and Wi-Fi provider and router information." Compl. ¶ 29. As explained in CaringBridge's Motion and below, collection of this data does not violate any statute or give rise to any cognizable privacy harm. And to the extent Plaintiff's claims rely on collection of more sensitive information, any such collection could not have occurred until after she created an account and agreed to the Terms of Use and the Privacy and Cookie Policy.

The Terms on their face apply to "[a]ny legal action or proceeding … relating to [Plaintiff's] access to, or use of" the CaringBridge service. Booth Decl. Ex. B. That is, it does not matter when the dispute arose, or when the underlying transaction or occurrence transpired.

> Courts construing arbitration clauses have refused to subject claims to arbitration where the claims arise from or relate to conduct occurring prior to the effective date of the agreement, and where the clause is limited to claims under "this Agreement." … In contrast, courts have found claims arising from or related to conduct occurring before the effective date of an arbitration clause to be



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
DENVER

> within the scope of a clause that "is not limited to claims arising under the agreement itself."

*TradeComet.com LLC v. Google, Inc.*, 435 Fed. App'x 31, 34–35 (2d Cir. 2011) (citations omitted) (affirming "retroactive" application of forum selection clause that "broadly includes any claim arising under or related to the 'Google Programs', irrespective of whether it arose prior to or subsequent to the acceptance of the … agreement"). The forum selection clause falls into this second category of forum selection clauses, as it requires venue in a Minnesota court for any legal dispute "relating to your access to, or use of, this service ***or*** these terms of use" and is therefore not limited to claims arising under the agreement itself. Booth Decl. Ex. B (emphasis added). The Terms therefore apply regardless of when Plaintiffs' claims arose. *See Trujillo v. Gomez*, No. 14-cv-2483, 2015 WL 1757870, at *8 (S.D. Cal. Apr. 17, 2015) (applying an arbitration clause retroactively because it "[did] not include any temporal limitations and [was] not limited to claims arising under the Agreement itself"); *In re Verisign, Inc. Derivative Litig.*, 531 F. Supp. 2d 1173, 1224 (N.D. Cal. 2007) (giving retroactive effect to an arbitration clause that "cover[ed] not just services provided under the agreement, but also 'any other services provided by KPMG', and disputes and claims involving 'any entity for whose benefit the services in question are or were provided'").

Every case that Plaintiff cites on this point is distinguishable because they all fall into the first category of forum selection clauses applying only to disputes arising out of the agreement itself. *Long v. Fidelity Water Sys., Inc.*, No. C-97-20118, 2000 WL 989914, at *2 (N.D. Cal. May 26, 2000) (forum selection clause applied to disputes "arising from or relating to this Agreement or the relationship which result from this Agreement"); *Morse v. ServiceMaster Global Holdings, Inc.*, No. C 10-00628, 2012 WL 4755035, at *4 (N.D. Cal. Oct. 4, 2012) (agreement to arbitrate "any and all work-related disputes" related to plaintiff's employment by defendant); *Merrimack Coll. v. KPMG LLP*, 88 Mass. App. Ct. 803, 804–05 (2016) (finding agreement to arbitrate "[a]ny dispute or claim arising out of or relating to the engagement letter between the parties, the services provided thereunder, or any other services provided by or on behalf of KPMG" was not intended to apply to earlier contracts between the parties); *Hendrick v. Brown & Root, Inc.*, 50 F. Supp. 2d 527, 530

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
DENVER

(E.D. Va. 1999) (agreement to arbitrate disputes arising out of employment contract); *Sec. Watch, Inc. v. Sentinel Sys., Inc.*, 176 F.3d 369, 372 (6th Cir. 1999) (arbitration agreement applied to disputes "arising out of or relating to the Products furnished pursuant to this Agreement or acts or omissions of Distributor or AT&T under this Agreement"); *Klay v. All Defendants*, 389 F.3d 1191, 1203 (11th Cir. 2004) (agreement to arbitrate disputes arising between contracting physicians and HMOs was restricted to the effective dates of that contract); *Bryden v. Verizon Cal. Inc.*, No, A143506, 2016 WL 3186913, at *3 (Cal. Ct. App. May 31, 2016) (arbitration provision in later service contract did not apply to disputes under prior contract between the parties); *Cobb v. Ironwood Country Club*, 233 Cal. App. 4th 960, 965 (2015) (addition of arbitration clause to country club's membership agreement did not apply to dispute by *former* members who were no longer subject to that agreement).

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
DENVER

There is no ambiguity for this Court to resolve—the Terms of Use require "any legal action or proceeding … relating to" the CaringBridge service to be brought in Minnesota court. That language is not restricted to claims arising out of the Terms of Use, nor is it restricted to claims arising after this agreement was formed. Plaintiff concedes that she agreed to the Terms of Use, and she is bound by their contents. The forum selection clause therefore applies to this dispute.

**B. <u>The Terms of Use Require This Action to Be Brought in Minnesota</u>**

Plaintiff contends that the Terms of Use do not require transfer to Minnesota because the choice of law provision in the Terms contains an exclusion for "conflict of law's provisions that would indicate the application of the laws of any other jurisdiction." Opp. at 4 (citing Booth Decl. Ex. B). This exclusion to the *choice of law* clause is not relevant to the *forum selection* clause and has no bearing on whether this action should be transferred to Minnesota. The forum selection clause is clear and unambiguous: "***Any*** legal action or proceeding … shall be instituted ***only in a state or federal court located in Hennepin County, Minnesota***." Booth Decl. Ex. B (emphasis added). There is no exclusion for actions in which another state's law applies. Plaintiff's choice of law analysis, which does not consider whether Minnesota's choice of law standards differ materially from California's, is irrelevant. Even if California law applies, Plaintiff's California

claims must be decided by a court in Minnesota under the unambiguous terms of the forum selection clause.

"When the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause" absent "extraordinary circumstances unrelated to the convenience of the parties [that] clearly disfavor a transfer." *Lee v. Fisher*, 70 F.4th 1129, 1143 (9th Cir. 2023) (quoting *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W.D. Tex.*, 571 U.S. 49, 60 (2013)). One such circumstance is when a plaintiff "makes a strong showing that 'enforcement would contravene a strong public policy of the forum in which suit is brought.'" *Id.* (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972)). Plaintiff has not come close to making this "strong showing" that a transfer to the District of Minnesota would contravene a strong public policy of this forum. The parties agree that a judge in that District is just as equipped to interpret California law (assuming it applies). And Plaintiff has provided no support for her position that the Terms of Use or the forum selection clause is otherwise unenforceable. Plaintiff's arguments that (1) the Terms of Use are an adhesion contract and (2) the parties had unequal bargaining power, Opp. at 3–4, have each been expressly rejected by the Ninth Circuit as a basis to avoid transfer pursuant to a forum selection clause. *See Lee v. Fisher*, 70 F.4th at 1142–43 (citing *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 593 (1991)); *see also Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1141 (9th Cir. 2004) ("[A] differential in power or education on a non-negotiated contract will not vitiate a forum selection clause."). Accordingly, this Court should enforce the forum selection clause and transfer this action to the District of Minnesota.

## III. <u>TRANSFER IS PROPER UNDER 28 U.S.C. §§ 1391 & 1404</u>

Plaintiff contends that venue is proper in this District under Section 1391 simply because she accessed the Website from California and therefore her injury, to the extent it exists at all, transpired in this forum. Opp. at 5. The locus of injury is a *relevant* factor in the Section 1391 analysis. *See Bates v. C & S Adjusters, Inc.*, 980 F.2d 865, 867–68 (2d Cir.1992); *accord Myers v. Bennett Law Offices*, 238 F.3d 1068, 1076 (9th Cir. 2001). It does not follow that this factor is dispositive. To the contrary, the mere fact that "the effect of the [Defendant's] action might be felt" in the forum is *not* sufficient to establish venue. *See Bates*, 980 F.2d at 867 (citing *Leroy v. Great*

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
DENVER

*W. United Corp.*, 443 U.S. 173, 186 (1979)). Rather, "[s]ubstantiality is intended to preserve the element of fairness so that a defendant is not haled into a remote district having no real relationship to the dispute." *Bockman v. 1st Am. Mktg. Corp.*, 459 Fed. App'x 157, 161 (3d Cir. 2012) (quoting *Cottman v. Transmission Sys., Inc.*, 36 F.3d 291, 294 (3d Cir. 1994)). The focus therefore must be on the "relevant activities *of the defendant* in the forum state, not on the effect of those activities on the plaintiff in the forum state." *Steen v. Murray*, 770 F.3d 698, 703 (8th Cir. 2014) (emphasis added).

CaringBridge's alleged events or omissions giving rise to Plaintiff's claims all took place in Minnesota. That is where CaringBridge and its employees are located, and that is where the Website was designed and maintained. *See* Booth Decl. ¶¶ 9–15. And although Plaintiff alleges that CaringBridge "installed" a "wiretap" on her device, the Complaint makes clear that the pixels at issue are "a piece of code" that is part of the Website. *See* Compl. ¶¶ 55, 93. To be sure, when anyone opens a website, her device requests instructions from the website server for displaying the contents of the website on the device, wherever it is located. But to interpret "the Website" as existing everywhere it is accessed, as Plaintiff's Opposition suggests, would frustrate the text and purpose of Section 1391's venue provisions. Plaintiff's argument that placing venue in Minnesota would be "perverse" simply because subject-matter jurisdiction is proper in this forum, *see* Opp. at 7, misapplies the applicable standards. It is immaterial whether CaringBridge "purposefully directed" its activities toward California (a question not raised in CaringBridge's motion). What matters for venue is where a substantial part of the events or omissions *of the defendant* took place. The relevant conduct by CaringBridge all took place in Minnesota; venue is therefore not proper in this forum.

Plaintiff also opposes transfer under Section 1404, arguing that her choice of forum is significant and that a transfer would be inconvenient to her. Opp. at 8–10. Plaintiff faults CaringBridge for not naming specific witnesses and the relevance of their testimony, but the vagueness of the Plaintiff's allegations and the uncertainty of her causes of action make it impossible for CaringBridge to identify specific individuals at this stage. Whoever they are, they are in Minnesota. Booth Decl. ¶¶ 10, 13, 15. Plaintiff also contends that her choice of forum should

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
DENVER

be given weight, but she glosses over the fact that she is bringing her claims on behalf of a *nationwide class* of every Website visitor in the United States. Plaintiff does not even begin to explain how "there is a significant connection between the forum and the activities alleged in the complaint." Opp. at 10. The only connection she alleges is that she opened the CaringBridge Website from a device in California, a connection shared only with California subclass members and no one else. By contrast, the major witnesses, evidence, transactions and occurrences relevant to Plaintiff's causes of action are all in Minnesota. Even most of the class members reside outside of this District. For all the reasons stated in CaringBridge's Motion, this case could have been brought in Minnesota and should have been brought there. Whatever interest California might have in enforcing its privacy laws, Minnesota has an equal interest in regulating its in-state businesses. *See Jackson v. Tesla, Inc.*, 772 F. Supp. 3d 1111, 1127 (N.D. Cal. 2025). Plaintiff provides no reason that the interests of justice will not be served by locating this action in the District of Minnesota, the logical venue for these claims.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
DENVER

## IV. <u>PLAINTIFF FAILS TO STATE A CLAIM</u>

Because venue is not proper in this District, CaringBridge's motion in the alternative under Rule 12(b)(6) should be held as moot after this Court grants CaringBridge's motion under Rule 12(b)(3). Regardless, Plaintiff has not stated a claim upon which relief can be granted.

### A. <u>Plaintiff Has Not Alleged Statutory Standing Under CIPA</u>

Plaintiff argues that CIPA has no statutory standing requirement, citing a California decision that did not involve a CIPA claim and which in no manner discusses the "injured by" language in Penal Code Section 637.2. Opp. at 12 (citing *Kashanian v. Nat'l Enter. Sys., Inc.*, 337 Cal. Rptr. 3d 18 (2025)). Both state and federal courts that *have* considered this requirement have held that a private right of action under CIPA requires a concrete and particularized injury. *E.g.*, *Heiting v. FKA Dist'g Co.*, No. 2:24-cv-073214, 2025 WL 736594, at *2 (C.D. Cal. Feb. 3, 2025); *Rodriguez v. Fountain9, Inc.*, No. 24STCV04504, 2024 WL 4905217 (L.A. Super. Ct. Nov. 21, 2024)).

Plaintiff has not alleged a concrete and particularized injury under binding Ninth Circuit precedent. In *Popa v. Microsoft Corp.*, 153 F.4th 784 (9th Cir. 2025), a plaintiff brought similar

class claims on behalf of a nationwide class, alleging that "session-reply technology"—which "embed[s] snippets of JavaScript computer code" on a website "for the purpose [of] intercepting and recording the website visitor's … mouse movements, clicks, keystrokes … , URLs of web pages visited, and/or other electronic communications in real-time." *Id.* at 786. The Ninth Circuit made clear that a privacy injury of the sort alleged by Plaintiff here must be "benchmarked to a specific tort" and that Plaintiff's burden is not satisfied by "briefly point[ing] to the common-law privacy torts of intrusion upon seclusion and public disclosure of private facts," as Plaintiff does in her Opposition. *Id.* at 791. Like the plaintiff in *Popa*, Plaintiff "does not explain how the tracking of her interactions with the … website caused her to experience any kind of harm that is remotely similar to the 'highly offensive' interferences or disclosures that were actionable at common law." *Id.* Multiple federal courts have since applied *Popa* to dismiss *with prejudice* CIPA claims based on the same types of website trackers as here, for lack of standing. *E.g.*, *Rodriguez v. Culligan Int'l Co.*, No. 25-cv-00225, 2025 WL 3064113, at *3–4 (S.D. Cal. Nov. 3, 2025); *Khamooshi v. Politico LLC*, No. 24-cv-07836, 2025 WL 2822879, at *3–4 (N.D. Cal. Oct. 2, 2025). This Court should follow *Popa* and likewise hold that Plaintiff does not allege standing under CIPA.

Plaintiff does not allege any facts that could support the infringement of a protected privacy interest. In her Opposition, Plaintiff points to no allegation that identifies a specific harm that is personal to her. Plaintiff cites only general allegations about what she believes the "tracking technologies" might be able to do. *See* Opp. at 13 (citing Compl. ¶¶ 24–60). Plaintiff asserts that the trackers collected "intimate details about her life, health, habits, and interests," *id.*, but the Complaint is devoid of any specific allegations about what details of her were collected, how they were used by third parties, or whether they were sold or used for advertising. The absence of specific allegations about what information of hers was collected is fatal to her claim. *See Winsor v. Sequoia Benefits & Ins. Servs., LLC*, 62 F.4th 517, 523 (9th Cir. 2023) ("[P]laintiffs must … show that they personally have been injured.").

Even assuming the general categories of device information identified in the Complaint were gathered from Plaintiff's device when she first visited the Website, she has no protected privacy interest in that information. Plaintiff alleges that the trackers collected "IP address, device



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
DENVER

information, and User-IDs," and "button click" information. Compl. ¶¶ 35, 59. This is information about her device, not her, and it is information that is automatically collected any time she visits any website (for instance, a website would not be able to display correctly on her device without being told what her screen resolution is set at). That is why numerous courts have held that this is not information in which a plaintiff has a legitimate expectation of privacy. *See Hubbard v. Google LLC*, No. 19-cv-07016, 2024 WL 3302066, at *7 (N.D. Cal. July 1, 2024) (collecting cases); *Khamooshi v. Politico LLC*, 786 F. Supp. 3d 1174, 1179 (N.D. Cal. 2025) (no expectation of privacy in information that a device "automatically send[s] … to the website"); *Heeger v. Facebook, Inc.*, 509 F. Supp. 3d 1182, 1189 (N.D. Cal. 2020) (no expectation of privacy in imprecise "location data" inferred from IP addresses). Indeed, the Ninth Circuit in *Popa* held that there was no privacy harm sufficient for standing even when the collection of such device information was pervasive enough to allow a "session reply," which is a "video replay of the user's behavior on the website" in a particular session. *See Popa*, 153 F.4th at 786. The routine collection of device information alleged here does not give rise to a privacy harm that can satisfy CIPA's injury requirement.



### B. <u>Plaintiff Has Not Alleged Actionable "Interception" of "Communications" Under CIPA or the ECPA</u>

Plaintiff has not alleged any violation of CIPA or the ECPA. At the outset, ECPA's party exception applies here. The ECPA is a one-party consent statute and therefore CaringBridge's decision to place the "trackers" on its site is sufficient to show consent. *See Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 945 (N.D. Cal. 2023). Plaintiff does nothing to establish that the "primary motivation" or even a "determining factor" in CaringBridge's use of Google's or Meta's analytics and marketing tools was to violate Plaintiff's privacy, as would be required for the crime-tort exception to apply. *See* Opp. at 19–20 (citing *Brown v. Google LLC*, 525 F. Supp. 3d 1049 (N.D. Cal. 2021)). Plaintiff cites cases in which defendants were alleged to have conspired with technology firms to violate HIPAA. *See, e.g.*, *Allen v. Midwest Express Care, Inc.*, No. 24-cv-05348, 2025 WL 2240253, at *3 (N.D. Ill. Aug. 6, 2025). Nothing of the sort is alleged here, where CaringBridge used these technologies for its own analytics and marketing purposes. In such cases,

courts have no problem finding that the party exception applies and dismissing ECPA claims based on website tracking technology. *See Lakes v. Ubisoft, Inc.*, 777 F. Supp. 3d 1047, 1058 (N.D. Cal. 2025) (party exception applied where purpose of tracking was "not to perpetuate torts on millions of Internet users, but to make money"); *Rand v. Eyemart Express, LLC*, No. 3:24-cv-621, 2025 WL 1519726, at *5 (N.D. Tex. May 27, 2025) (where "plaintiffs have failed to plead facts to plausibly establish that any PHI was shared with Meta [in violation of HIPAA] … the crime-tort exception does not apply").

Even without the party exception, Plaintiff consented to the collection of device information when she agreed to CaringBridge's Privacy and Cookies Policy, which discloses in detail how device information of the sort complained about here is collected and used by CaringBridge and its "ad network partners." Booth Decl. Ex. C. Plaintiff contends that her information was collected even before she made an account, so her later consent was invalid. Opp. at 13. But the Terms of Use states that "By using this Service, you are bound by … our Privacy and Cookie Policy," with no temporal restriction of when the Service was used. Booth Decl. Ex. B. Regardless, Plaintiff would not have had any opportunity to share private information through CaringBridge prior to creating an account and agreeing to the Terms of Use and Privacy and Cookies Policy. And if her claim is limited to the collection of IP address, screen resolution, and other basic device information that may have been collected prior to account creation, these are not "contents or meaning of any message" nor are they "confidential."

The "content" of a communication does not include "record information" or "information regarding the characteristics of the message." *Salah v. Nike, Inc.*, 562 F. Supp. 3d 503, 517 (C.D. Cal. 2021). For that reason, courts routinely dismiss eavesdropping claims under CIPA or wiretapping claims under the ECPA based on website tracking technology that collected IP address, device information, or button clicks. *See id.* at 518 ("mouse movements, clicks, typing, scrolling, swiping, tapping, keystrokes, geographic information, IP addresses, and data entry" were not the "contents" of any message); *In re Zynga Privacy Litig.*, 750 F.3d 1098, (9th Cir. 2014) ("referer header information that … included the user's Facebook ID and the address of the webpage from which the user's HTTP request to view another webpage was sent" was not "contents" of a

communication under ECPA); *King v. Hard Rock Café Int'l (USA), Inc.*, No. 2:24-cv-01119, 2025 WL 1635419, at *4 (E.D. Cal. June 9, 2025) (collection of address, email address, telephone number, and zip code of website visitors was "record information"); *Augustine v. Great Wolf Resorts, Inc.*, No. 23-cv-00281, 2024 WL 3450967, at *5–6 (S.D. Cal. July 18, 2024) (allegation that tracker recorded keystrokes, credit card numbers, clicks and movements were insufficient to allege interception of the contents of any communication).

Plaintiff argues that these data elements nonetheless are "content" of her communications to the extent a URL that was collected might have revealed her search query, or to the extent her button clicks could have revealed some kind of private information about her. Opp. at 15–16. The problem with this argument is that the Complaint "does not identify with specificity what information she provided on [the] Website that was intercepted, … such as what webpages she viewed, what buttons she clicked, what search terms she used, what … she searched for," and so forth. *King*, 2025 WL 1635419, at *4. Without these allegations, this Court has no way of determining whether the URLs or button clicks did, in fact, reveal private information related to Plaintiff. *See id.* (dismissing CIPA claim); *see also Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117, 1123 (S.D. Cal. 2023) (complaint lacked sufficient factual support for CIPA claim because it only provided hypothetical examples and failed to specify what information plaintiffs provided defendants through their browsing history). The threadbare allegations in the Complaint do not adequately allege that any contents of her messages were intercepted.

Nor do these allegations establish that any communications were intercepted "in transit." Apart from conclusory allegations stating that Google or Meta "intercepted" communications "in transit" or "in real time," the Complaint does not "dispel the notion that [the third parties] receive[] the information 'after the [communication] reaches'" CaringBridge. *Swarts v. Home Depot, Inc.*, 689 F. Supp. 3d 732, 746 (N.D. Cal. 2023). To the contrary, according to the Complaint, "communications" are sent first to the Website, and then the "tracking code" sends it to Google. Compl. ¶ 44; *see also id.* ¶ 47 ("Google collections information *from Defendant's website* and sends back an analysis of that information … ." (emphasis added)). Similarly, the "Meta Pixel is a piece of code" that CaringBridge allegedly "integrate[d] into [its] Website. … When the Meta Pixel

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
DENVER

captures an action, it sends a record to Facebook." Id. ¶ 55. That is, Plaintiff alleges that a user sends a communication to the Website, and then information gets sent to Facebook. Conclusory assertions aside, the Complaint alleges that communications are sent by the Website to Google and Meta only after those communications are received by the Website. That does not describe the "interception" of any message "in transit."

### C. **<u>Plaintiff Has Not Pleaded Scienter as Required by CIPA</u>**

Plaintiff has accused CaringBridge of a violation of California's Penal Code, but she argues there is no scienter requirement because Section 638.51 does not expressly mention any mental state as part of its proscriptions. Opp. at 17. Plaintiff's position gets the law exactly backwards: "courts construe criminal statutes against the backdrop of the common law presumption that scienter is required and imply the requisite mental state, even where the statute is silent." *People v. Hall*, 2 Cal. 5th 494, 501 (2017); *Heiting v. Taro Pharms. USA, Inc.*, 709 F. Supp. 3d 1007, 1019 (C.D. Cal. 2023) (interpreting CIPA to require scienter in aiding and abetting claim). Moreover, California Penal Code § 20 provides that "[i]n every crime or public offence there must exist a union … of act and intent, or criminal negligence." Scienter is therefore a requirement of any claim brought under Section 638.51.

Plaintiff has not alleged the requisite intentionality or guilty mind on CaringBridge's part, nor can such a mental state be inferred from the allegations of the Complaint. Plaintiff's reliance on *Smith v. Rack Room Shoes, Inc.*, No. 24-cv-06709, 2025 WL 1085169 (N.D. Cal. Apr. 4, 2025), is misplaced. In that case, the defendant contracted with third parties to use trackers that provided "a treasure trove of insights about [] customers' shopping habits, like their browsing and purchasing history." *Id.* at *4. That is, the trackers were used so that website users' browsing information would be processed by the third parties and provided back to the website in the form of marketing insights about individuals' shopping habits. Here, Plaintiff does not allege that CaringBridge is sending personal health information to Google or Meta so that these companies can provide insights about visitors' health conditions. Indeed, the Privacy and Cookie Policy itself undermines any inference that could be made about CaringBridge intending to provide confidential, private health information to Google or Meta. *See* Booth Decl. Ex. C ("Any information that these third parties

collect via cookies will not be linked to your personally identifiable information. “). Plaintiff’s citation to *James v. Walt Disney Co.*, 701 F. Supp. 3d 942 (N.D. Cal. 2023), is also inapposite. In *James*, the Court inferred Disney’s intent for its communications to be intercepted by Oracle from the existence of a contract between the two companies that allegedly provided for such interception. *Id.* at 954. There is no contract alleged in the Complaint, which simply alleges that CaringBridge uses some of the most popular third-party website tools, which provide analytics and marketing insights in the aggregate from information that devices send to CaringBridge when accessing its Website. *See* Compl. ¶¶ 1–2. This is not enough to infer any intent on CaringBridge’s part for these third parties to violate Plaintiff’s privacy or to collect any information from Plaintiff in an unlawful manner.

**D. <u>Plaintiff Alleges No Intrusion Upon Seclusion</u>**

Plaintiff has identified a cognizable privacy interest in “medical history and information.” Opp. at 18. But the Complaint does not allege facts showing that any of her medical history or information was collected by CaringBridge or sent to any third party. The only specific information that she alleges Google or Meta collected was her IP address, device information, and button clicks. As explained above, these allegations are not sufficient to plead the violation of any privacy interest. Nor is their disclosure “highly offensive” as required for a claim of intrusion upon seclusion. *See Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012) (disclosure of users’ browsing history to third parties not highly offensive); *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1060, 1063 (N.D. Cal. 2012) (disclosures of device ID number, personal data, and geolocation information without consent were not an egregious breach of social norms). And to the extent Plaintiff alleges that she “provided sensitive medical and personally identifying information” to CaringBridge, she does not allege facts showing that CaringBridge shared this information with Google or Meta. Compl. ¶ 12. Indeed, she does not even allege that it was *her* sensitive information that she provided, as she alleges only that she used CaringBridge “to interact with family members and receive status updates on the health condition of her loved one.” *Id.* This is not sufficient to state a claim for intrusion upon seclusion.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
DENVER

## V. CONCLUSION

For the foregoing reasons, this Court should grant CaringBridge's Motion and dismiss the case for lack of venue, or in the alternative transfer venue to the U.S. District Court for the District of Minnesota. Should this Court decide to retain venue, the Court should dismiss the Complaint for failure to state a claim.

Respectfully submitted,

Dated: November 10, 2025

**BAKER & HOSTETLER LLP**
*/s/ Jason A. Orr*
Jason A. Orr

Paul Karlsgodt
*Attorneys for Defendant*

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
DENVER